IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIMECORAL, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15 C 7484 |
| | ) |
| CAREERBUILDER, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff LimeCoral, Ltd.'s (LimeCoral) partial motion for summary judgment, and on Defendant CareerBuilder, LLC's (CareerBuilder) motion for summary judgment. For the reasons stated below, CareerBuilder's motion for summary judgment is granted, and LimeCoral's partial motion for summary judgment is denied.

## BACKGROUND

In 2008, CareerBuilder allegedly contracted with LimeCoral to have LimeCoral create media files in exchange for CareerBuilder providing LimeCoral with a portion of CareerBuilder's online design service orders. After the end of the formal agreement, CareerBuilder allegedly continued to seek such services from

1

LimeCoral. In 2014, CareerBuilder allegedly reduced the volume of online design service orders and LimeCoral notified CareerBuilder that the license for use of LimeCoral's works had been revoked. LimeCoral contends that CareerBuilder has continued to use LimeCoral's products without permission and has exceeded the scope of the alleged licences. LimeCoral includes in its complaint a breach of contract claim (Count I), a copyright infringement claim (Count II), and an unjust enrichment claim (Count III). LimeCoral moves for summary judgment on the issue of the ownership of the works at issue. CareerBuilder moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling

on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

### I. Copyright Infringement Claim (Count II)

LimeCoral contends in its partial motion for summary judgment that it has ownership over the works in question. CareerBuilder has not disputed LimeCoral's ownership of the works. (R LSF Par. 16). CareerBuilder argues, however, that during the years of its relationship with LimeCoral, LimeCoral failed to assert its ownership interest over the works, and that CareerBuilder acquired an implied nonexclusive license over LimeCoral's works. The owner of a copyright possesses the "exclusive rights to copy or distribute copies of the work," but the "[t]he copyright owner may authorize another person to do so through an exclusive written license, . . . or a nonexclusive oral or implied license." *Muhammad-Ali v. Final*

3

*Call, Inc.*, 832 F.3d 755, 762 (7th Cir. 2016). The creator of a work may grant implied nonexclusive license by "permit[ting] the use of a copyrighted work in a particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). Unlike with an exclusive license, "a nonexclusive license may be granted orally, or may even be implied from conduct." *Id.* (internal quotations omitted)(quoting *Melville B. Nimmer & David Nimmer*, 3 Nimmer § 10.03[A] at 10-40.1); *see also Beasley v. Commonwealth Edison Co.*, 2013 WL 4564857, at *7 (N.D. Ill. 2013)(stating that "consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing"). A work-for-hire arrangement may give rise to an implied nonexclusive license. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999). An implied nonexclusive license is deemed to have been extended when: "(1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee who asked for it; and (3) the licensor intends that the licensee copy and distribute the work." *Id.* The assertion of an implied nonexclusive license in response to a copyright infringement claim is an affirmative defense and the burden is on the defendant to establish the defense. *Muhammad-Ali*, 832 F.3d at 761; *Shaver*, 74 F.3d at 775.

It is undisputed that the parties entered into a written agreement in 2008 (2008 Agreement) under which CareerBuilder hired LimeCoral for the creation of works. (R CSF Par. 8-12). It is undisputed that LimeCoral did in fact deliver the works to

CareerBuilder and that LimeCoral understood that CareerBuilder was going to use the works in its business. (R CSF Par. 8-12). It is undisputed that the 2008 Agreement even enabled CareerBuilder to create derivative works. (R CSF Par. 9). LimeCoral does not dispute that after the 2008 Agreement ended, LimeCoral agreed to continue its relationship with CareerBuilder, "regardless of any contract or not." (R CSF Par. 14). It is further undisputed that LimeCoral continued its relationship with CareerBuilder until 2014 and provided works to CareerBuilder for its use. (R CSF Par. 19, 28). Based on the totality of the undisputed evidence, it is clear that CareerBuilder acquired an implied nonexclusive license to use the works provided by LimeCoral.

LimeCoral argues vehemently that it never agreed to transfer its ownership interest in the works to CareerBuilder. (Resp. CSJ 2, 6-7). LimeCoral points out that it rejected a proposed agreement in 2012 under which LimeCoral would transfer ownership of the works to CareerBuilder. (LSAF Par. 20). LimeCoral also points to evidence that it contends shows that on certain occasions it asserted that it was the owner of its works. (Resp. CSJ 2, 9). Even if LimeCoral could prove such facts, they do not negate the fact that an implied license existed. Under a license, the copyright owner merely authorizes another party to use the work. *Muhammad-Ali*, 832 F.3d at 762. The Seventh Circuit has clearly stated that "an implied nonexclusive license . . . does not transfer ownership of the copyright to the licensee," and that "[i]t simply permits the use of a copyrighted work in a particular

manner." *Id.* (internal quotations omitted)(quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)). In this case, the undisputed facts show a pattern of conduct by LimeCoral over a period of many years that conveyed to CareerBuilder that it was authorized to use the works in a certain manner.

The undisputed facts also show that LimeCoral is attempting to gain an unfair benefit from the relationship it formed with CareerBuilder, which is part of the purpose in the law for the implied license. The implied license is intended to prevent a work creator from providing a work for use and then waiting until the recipient cannot feasibly complete its business without the work. *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 835 (9th Cir. 2001). Such a result would effectively allow the creator of the work to hold the recipient "hostage" and extract an unjust benefit from the recipient because at some point in a project it would be too costly for the recipient to find another party to create the needed work. *Id.* The undisputed facts in this case show that Brian Schoenholtz (Schoenholtz), the principal for LimeCoral, did just what the implied license was intended to protect against. The undisputed facts show that LimeCoral knowingly helped CareerBuilder work itself into a corner by providing CareerBuilder with thousands of works for years and years. It is undisputed that in 2009, Schoenholtz began seeking legal advice for filing claims against CareerBuilder, and yet he continued LimeCoral's relationship with CareerBuilder until 2014. (R CSF Par. 28). There is undisputed evidence showing that Schoenholtz allowed CareerBuilder to use LimeCoral's works

and then later extract a sum from CareerBuilder under threat of litigation. (R CSF Par. 29). For example, in 2012, Schoenholtz sent a friend the following email:

> No contracts in place. No Work for Hire Agreement in place. I still classify as a CB employee (as crazy as it may sound). And then to top it all off, I will go after any/all design vendors (except Solanatel) or clients who use my work as well. Not to mention the hundreds of thousands of dollars in extra revisions they own on, the licensing fees for future use of my files . . . *and then a slew of damning evidence I have collected over the years.* Watch and learn my friend. They caused me a lot of pain and I'm going to go Monte Cristo on them one day. He who laughs last, is he who wins.

(R CSF Par. 29)(emphasis added). Schoenholtz admitted that "going Monte Cristo" essentially meant going in for the kill. (R CSF Par. 32). Yet even after apparently collecting "damning evidence" for years, Schoenholtz continued his ongoing relationship with CareerBuilder. It is further undisputed that in March 2014, while LimeCoral continued its relationship with CareerBuilder, Schoenholtz stated in an email the following:

> I have $100,000 set aside to go to battle with. My case is stronger than ever after *several more mistakes they made. I'm going to wait* a month or two to see what happens but eventually I'm going in for the kill.

(R CSF Par. 31)(emphasis added). Schoenholtz admits that his reference to his case being stronger than ever meant that he believed that damages were accruing from CareerBuilder's ongoing use of the works. (R CSF Par. 31). LimeCoral has not produced any evidence that would enable a reasonable trier of fact to conclude anything other than that LimeCoral laid in wait for years and years in anticipation of

7

a big pay day either by obtaining a judgement against CareerBuilder in litigation or by extorting a settlement from CareerBuilder.

LimeCoral argues that even if an implied license existed, it was not necessarily an irrevocable license. However, LimeCoral has not pointed to evidence showing that any revocable term existed. Even if, for example, the court viewed the evidence in a manner favorable to LimeCoral and accepted Schoenholtz's assertion that CareerBuilder agreed to provide LimeCoral with at least $35,000 of business per month, there is no evidence of an agreement tying that to a right of instant revocation of licenses for all works back to 2008. (R LSAF Par. 27). There is no evidence indicating that LimeCoral could take the drastic step of instantly revoking the authorization to use the thousands of previously-delivered designs merely because CareerBuilder might not have forwarded a certain level of online design service orders during one month. (R CSF Par. 46). Such a right to revoke would render the implied license meaningless, allowing LimeCoral to hold CareerBuilder hostage for the funds that Schoenholtz in his emails anticipated obtaining from CareerBuilder. LimeCoral admits that in 2014, it sought to revoke authorization to use any of the media files provided to CareerBuilder all the way back to 2008. (LSAF Par. 36). The undisputed facts also show that CareerBuilder fully paid for LimeCoral's works and there was not any ongoing performance required. Based on the above, no reasonable trier of fact could conclude anything other than that CareerBuilder acquired a nonexclusive implied license.

LimeCoral also argues that CareerBuilder exceeded the scope of any license by creating derivative works. However, it is undisputed that in the 2008 Agreement, CareerBuilder was authorized to create derivative works. LimeCoral admits that "[w]hen a designer provides editable files to a customer, the designer is giving the customer the right to edit those files." (R CSF Par. 6). It is further undisputed that as LimeCoral continued its relationship with CareerBuilder, LimeCoral continued to provide editable files to CareerBuilder when asked until 2014. (R CSF Par. 58). These undisputed facts further illustrate that LimeCoral's actions conveyed to CareerBuilder that it could use LimeCoral's works in a certain manner. Based on the undisputed facts, no reasonable trier of fact could find other than that CareerBuilder has met its burden for its affirmative defense. Therefore, CareerBuilder's motion for summary judgment on the copyright claim is granted and LimeCoral's partial motion for summary judgment is denied.

II. Breach of Contract Claim (Count I)

LimeCoral argues that during its relationship with CareerBuilder, there were a series of informal oral contracts formed, and that CareerBuilder breached the terms of such contracts. (LSAF Par. 16-18). LimeCoral argues that there are disputed facts regarding the formation of the alleged oral agreements that can only be resolved by the trier of fact at trial. LimeCoral provides little more than Schoenholtz's vague assertions as to oral agreements without any specificity as to

when or where or the precise terms of the alleged agreements. For example, when Schoenholtz was asked if he could recall any specific instance when someone with CareerBuilder agreed to renewal fees, Schoenholtz responded that he could not recall any such instance. (R CSF Par. 53). Another example is when Schoenholtz was asked about the alleged agreement that LimeCoral could revoke the licenses. Schoenholtz could not identify any specific instance when such an agreement was made orally. When asked about any oral agreement at his deposition, Schoenholtz responded: "I don't recall." (R CSF Par. 46); *see also Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016)(stating that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events")(internal quotations omitted)(quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

Nor do the alleged oral agreements even match up with the undisputed facts concerning the pattern of conduct by LimeCoral. For example, although LimeCoral now contends that CareerBuilder was supposed to have been paying renewal fees, it is undisputed that for a period of over six years and two thousand projects, LimeCoral has not pointed to evidence showing that CareerBuilder ever paid any renewal fee or that LimeCoral asked for any renewal fee. (R CSF Par. 51-52). Similarly, although LimeCoral now seeks hundreds of thousands of dollars for supposed agreed revision fees, LimeCoral has not pointed to evidence showing that

it ever referenced such fees in the many invoices it sent to CareerBuilder during the years and years of the relationship. (R CSF Par. 66). To the extent that LimeCoral laid in wait for years, intending to spring the alleged oral agreements on CareerBuilder, there was no meeting of the minds and no contract formed since CareerBuilder reasonably understood that the parties were operating under different terms. LimeCoral has failed to point to sufficient evidence that would enable a reasonable trier of fact to find in its favor on its breach of contract claim. The undisputed facts also show that LimeCoral has waived its right to assert any breach of contract claims at this juncture. There are undisputed facts that show that LimeCoral purposefully lured CareerBuilder into conduct that would enable LimeCoral to later hold CareerBuilder ransom. For example, it is undisputed that in 2009, Schoenholtz sent an email stating the following:

> I say we seek legal advice on [CareerBuilder's] breach of contract, I could see a settlement out of court for $200,000 or more. *I have plenty of proof* that could easily show the court that this is a simple matter of a large corporation preying on a small business not to mention numerous breaches of agreement and possible copyright infringement.

(R CSF Par. 27)(emphasis added). Yet, despite Schoenholtz's talk of "proof" of breaches of oral agreements in 2009, LimeCoral continued to do business with CareerBuilder until 2014. Based on the above, CareerBuilder's motion for summary judgment on the breach of contract claim is granted.

### III. Unjust Enrichment Claim (Count III)

LimeCoral argues that CareerBuilder has been unjustly enriched by its use of LimeCoral's works. For an unjust enrichment claim, a plaintiff must show "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). As explained above, the undisputed facts show that LimeCoral waited for years to pursue its claims, allowing CareerBuilder to use LimeCoral's works in anticipation of a big payday in litigation. The undisputed facts show that CareerBuilder paid for what it used and complied with its understanding of the terms of its relationship with LimeCoral. No reasonable trier of fact could conclude that there is anything unjust in such conduct. The court also notes that the equities in this matter do not support funding a party that takes steps to foster the creation of its own legal injuries in order to obtain a financial reward in litigation. Therefore, CareerBuilder's motion for summary judgment on the unjust enrichment claim is granted.

## CONCLUSION

Based on the foregoing analysis, CareerBuilder's motion for summary judgment is granted and LimeCoral's partial motion for summary judgment is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 9, 2017